UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SHAUN H. REINCKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:20-cv-00473-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Kilolo Kijakazi,* | ) |
| *Acting Commissioner of Social Security*,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Shaun H. Reincke appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his applications under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Reincke applied for benefits on June 16, 2019, alleging disability beginning June 15, 2003. (ECF 16 Administrative Record ("AR") 11, 233-46). Reincke amended his alleged onset date to June 16, 2019. (AR 11). As a result of this amended onset date and a date last insured of December 31, 2010, Reinke constructively waived his DIB claim and withdrew his DIB application. (AR 11). Reincke's claim for SSI was denied initially and upon reconsideration. (AR 107-08, 143-44). After a timely request (181-82), a hearing was held on July 16, 2020, before administrative law judge ("ALJ") Stephanie Katich, at which Reincke, represented by counsel, and a vocational expert testified (AR 44-78). On July 28, 2020,

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

the ALJ rendered an unfavorable decision to Reincke, concluding that he was not disabled because he could perform a significant number of jobs in the economy despite the limitations caused by his impairments. (AR 11-28). Reincke's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 416.1481.

Reincke filed a complaint with this Court in December 2020, seeking relief from the Commissioner's decision. (ECF 1). In his appeal, Reincke alleges that the ALJ: (1) failed to incorporate all of his mental limitations in the residual functional capacity ("RFC"); and (2) failed to properly analyze the opinion of the consultative examiner. (ECF 24 at 4).

At the time of the ALJ's decision, Reincke was thirty-eight years old (AR 240), had an eleventh grade education with some special education classes (AR 26, 257), and had no past relevant work. (AR 26; *see* AR 258). In his application, Reincke alleged disability due to arthritis, right shoulder impairments, post-traumatic stress disorder (PTSD), depression, anxiety, suicidal thoughts and tendencies, cutting, attention deficit disorder (ADD), insomnia, mental impairments, social anxiety, travel anxiety, and harming both self and others. (AR 256).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the

Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking SSI must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to … last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy.[1]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

---

[1] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks he can do despite his limitations. 20 C.F.R § 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 416.920(e).

B.   *The Commissioner's Final Decision*

On July 28, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 11-28). At step one, the ALJ concluded that Reincke had not engaged in substantial gainful activity since June 16, 2019, the amended alleged onset date. (AR 14). At step two, the ALJ found that Reincke had the following severe impairments: bilateral knee impairment/right Baker's cyst; right hand paresthesia/right trigger finger; right bicep tendinopathy; December 2017 right shoulder surgery; major depressive disorder/persistent depressive disorder, rule out borderline personality disorder; attention deficit hyperactivity disorder (ADHD); social phobia; PTSD; and generalized anxiety disorder. (*Id.*).

At step three, the ALJ concluded that Reincke did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 15). Before proceeding to step four, the ALJ determined that Reincke's symptom testimony was not entirely consistent with the frequency and severity reflected within the medical evidence and other evidence of record with respect to his limitations. (AR 24). The ALJ assigned Reincke the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as reduced by the following. The claimant can occasionally balance, stoop, kneel, crouch and crawl [, and] climb ladders, he can occasionally climb ropes, scaffolds, ramps and stairs, and he can occasionally reach overhead with the upper right extremity. Mentally, the claimant can understand, remember and carry out simple instructions and tasks, he can make judgments on simple work related decisions, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting free from fast-paced production requirements. The claimant can also respond appropriately to occasional and superficial interactions with coworkers and supervisors, but he should avoid work activity requiring interactions with the general public.

(AR 23). The ALJ found at step four that Reincke had no past relevant work. (AR 26). However, at step five the ALJ found that jobs exist in significant numbers in the national economy that Reincke could perform despite the limitations caused by his impairments. (AR 26-27). Therefore, Reincke's disability application was denied. (AR 27).

*C. Medical Opinions*

Reincke asserts that the ALJ failed to properly analyze the opinion of Leslie Predina, Ph.D., H.S.S.P., a consultative examiner, and mischaracterized or cherry-picked evidence to support her decision. (ECF 24 at 19-28). For the following reasons, Reincke's arguments – specifically as to the errors made in analyzing Dr. Predina's opinion – are persuasive.

Under the prior regulations, "more weight [was] generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 416.927(c)(2). This so called "treating physician rule," however, was eliminated for claims – such as Reincke's – filed after March 27, 2017. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). "Opinion evidence is now governed by 20 C.F.R. §§ 404.1520c [and] 416.920c (2017)." *Id.* The ALJ no longer assigns "any specific evidentiary weight" to medical opinions, but rather she evaluates the persuasiveness of medical opinions. 20 C.F.R. § 416.920c. When considering the persuasiveness of any medical opinion, an ALJ must now consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. *See Inmam v. Saul*, No. 1:20-CV-231 DRL, 2021 WL 4079293, at *2 (N.D. Ind. Sept. 7, 2021).

"The regulations state that supportability and consistency are the most important factors to consider, and that the other three factors only require discussion if it is appropriate for the determination." *Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior

administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

An ALJ cannot "cherry-pick" evidence supporting one outcome, while failing to address evidence that would undercut her determination. *Etherington*, 2021 WL 414556, at *4; *see also Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984). In other words, while the ALJ is free to weigh conflicting opinion evidence, *see Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004), "[she] may not ignore entire lines of contrary evidence," *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (collecting cases). At the same time, "[w]hen an ALJ denies benefits, [she] must build an accurate and logical bridge from the evidence to her conclusion, and [she] may not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations and internal quotation marks omitted).

Dr. Predina conducted a mental status examination on January 8, 2020. (AR 882-85). Dr. Predina noted that Reincke reported he was capable of completing self-care tasks, but that he had not showered in two months. (AR 883). Dr. Predina observed that Reincke "had a strong odor suggesting a lack of attention to hygiene." (*Id.*). Dr. Predina further observed that Reincke's affect was flat, and that his mood suggested feelings of depression and anxiety. (*Id.*). Dr. Predina opined that Reincke's behavior suggested difficulties with hyperactivity, and that his ability to sustain his concentration and persistence "appeared to be slightly impaired." (*Id.*). Dr. Predina stated that Reincke frequently asked for questions to be repeated and appeared to be experiencing some problems recalling information. (*Id.*). Reincke was able to recall four digits forward and three digits backward. (AR 884). Dr. Predina further noted that Reincke's efforts on the assessment tasks appeared to "wax and wane," and this should be considered in evaluating the validity of his performance on the assessment tasks. (AR 885).

Dr. Predina found that Reincke's performance indicates "some issues with his level of cognitive functioning." (*Id.*). Dr. Predina found his judgment, common sense, orientation, and ability to sustain his concentration and persistence appeared to be impaired. (*Id.*). Dr. Predina opined that Reincke would "likely have a few problems being able to concentrate and persist on his job responsibilities." (*Id.*). Dr.

6

Predina further opined that Reincke's problems with his memory may be secondary to his depression or due to his history of multiple head injuries, but indicated that he would benefit from a memory evaluation to formally assess his memory functioning. (*Id.*). Dr. Predina opined that Reincke would have some problems recalling tasks on a job, and that his cognitive ability appeared to be in the low average range. (*Id.*). Dr. Predina opined that Reincke would struggle to get along with his supervisors and coworkers "due to his mental health issues." (*Id.*).

The ALJ discusses Dr. Predina's opinion at step three in her discussion of the paragraph B criteria. The ALJ found the testing results (such as the serial 7's, calculations, and memory testing) to be more persuasive than Dr. Predina's medical source statement. (AR 18). The ALJ found that Dr. Predina's medical source statement was based on Reincke's subjective reports, and these "findings of questionable validity do not reasonably support greater limitation in functioning" than the limitations provided in the RFC. (*Id.*). Specifically, the ALJ found that Dr. Predina's opinions regarding Reincke's likely struggles with concentration, memory, and orientation were in conflict with his mental status exam, wherein Reincke was fully oriented and performed well on serial 7's, calculations, and memory testing. (*Id.*). The ALJ further relied on Dr. Predina's note that Reincke's effort waxed and waned, which questioned the validity of Reincke's performance. (*Id.*). Yet, despite this note, the ALJ found that Reincke still showed minimal to unremarkable deficits in the testing related to concentration, memory, and general judgment. (*Id.*).

Reincke takes issue with the ALJ's finding that Dr. Predina's medical source statement appeared to be based on Reincke's subjective reports. While Dr. Predina's medical source statement does discuss Reincke's self-report of symptoms, the portion of the examination with his opinion and diagnostic impressions relies on the testing and his observations during the examination. (AR 885). Dr. Predina's only discussion of Reincke's subjective reports in this area are to compare his reports with his cognitive abilities as observed during the examination. (*Id.*). In this way, the subjective report is filtered through the psychologist's training and judgment. *See Adaire v. Colvin,* 778 F.3d 685, 688 (7th Cir. 2015). Moreover, the Seventh Circuit Court of Appeals has held that a similar statement regarding mental health

7

professionals considering subjective reports "repeat[ed] the fundamental error that 'subjective' statements are to be given zero weight." *Id.* (finding that the ALJ erred in dismissing an examining physician's opinion on the basis that it "appear[ed] to depend almost exclusively on the claimant's subjective statements and subjective presentation rather than on objective medi[c]al findings" (second alteration in original)). The ALJ mischaracterized Dr. Predina's opinion in finding that the doctor relied on Reincke's subjective reports in forming the opinion, as the opinion properly considered both Reincke's subjective reports and objective testing.

The ALJ also erred in failing to consider the consistency and supportability of Dr. Predina's opinion with other evidence in the record. Reincke's social worker at Park Center Inc., David Hilbish, M.A., provided a mental health opinion in May 2020. (AR 925-28). Hilbish opined that Reincke would be either unable to meet competitive standards or have no useful ability to function in all but two of the mental abilities and aptitudes needed to do unskilled work. (AR 925). He further opined that Reincke would either be seriously limited, unable to meet competitive standards, or have no useful ability to function in all of the abilities and aptitudes needed to perform semiskilled and skilled work or particular types of jobs. (AR 927). Hilbish opined that Reincke would be absent more than four days per month, and that he would need help to manage his funds. (*Id.*).

Hilbish explained in handwritten notes on the back of the checklist opinion that Reincke "overreacts and is overwhelmed by minimal and common everyday stressors." (AR 926). He also noted that Reincke commonly has frightening thoughts that would interfere with work tasks, including tasks of suicidal ideation and self-harm. (*Id.*). Hilbish stated that Reincke is often irritable and can respond "explosively" to criticism and correction. (*Id.*). He further stated that Reincke's irregular sleeping and self-care habits would affect both his work performance and his relationships with coworkers. (*Id.*). With regard to emotions, Hilbish stated that Reincke struggles to effectively regulate his emotions, and therefore struggles with appropriate response to criticism and correction. (AR 928). Hilbish noted that the side effects of Reincke's medication can leave him feeling more agitated, tired, or physically feeling unwell. (*Id.*). Hilbish noted that Reincke struggles with the ability to concentrate, learn new tasks, pay

attention to detail, and problem solve. (*Id.*). Finally, Hilbish explained that Reincke struggles to remember details and often avoids tasks, places, or objects that remind him of past trauma. (*Id.*).

The ALJ found this opinion to be not persuasive, again finding that the overall evidence does not support this opinion. (AR 21-22). The ALJ relied on Reincke's limited treatment/medical compliance, improvement with conservative treatment, sustained involvement in a wide range of daily activities, normal perception/memory, and appropriate behavior. (AR 22). However, the ALJ does not discuss how Dr. Predina's and Hilbish's opinions support each other in their findings. The ALJ does not discuss the consistency of the opinions in opining Reincke's difficulties with interpersonal relationships, memory, and concentration. The ALJ erred in failing to discuss how these opinions are consistent with each other.

In discussing Dr. Predina's opinion, the ALJ also found many of Reincke's subjective statements to Dr. Predina to be not persuasive. (AR 18). The Court will discuss these here, as Reincke alleges that the ALJ cherry-picked or otherwise misrepresented information in this analysis, which he alleges impacted the ALJ's discussion and analysis of Dr. Predina's opinion.

Reincke asserts that the ALJ erred in finding Reincke's statement about not showering in two months to be "not consistent with nor reasonably supported by the overall evidence," citing records from September 2019 through December 20, 2019, which reflect Reincke's reports of bathing and grooming prior to sessions. (AR 18). However, this is a mischaracterization of the evidence in the record. As an initial matter, Reincke reported in January 2020 that he had not bathed for two months, and therefore notes from September 2019 would not serve to refute his claim. Regardless, the ALJ's characterization of Reincke's hygiene and bathing does not reflect the evidence in the medical record. While there are two treatment notes that indicate Reincke showered prior his session, these notes are only a portion of the evidence regarding Reincke's hygiene troubles. (AR 819, 927). In March 2019, Reincke's treatment providers assigned him the goal of bathing every other day. (AR 854). In August 2019 he presented with poor grooming, and he was unkempt and disheveled. (AR 812). In a progress note in August 2019, it was noted that he was only managing to bathe once a week. (AR 854). In September 2019, he was noted to be untidy and unkempt, but Reincke reported washing his hair and bathing prior to the appointment.

(AR 819).  A narrative note from November 22, 2019, stated that Reincke had not bathed for three weeks.  (AR 833).  However, by November 26, 2019, Reincke stated he did bathe prior to his appointment, although he was still noted to be untidy and unkempt.  (AR 827, 836).  His bi-weekly progress notes frequently indicate he was not meeting his goal of bathing every other day.  (AR 832, 835, 838, 841, 844, 847, 850).  In December 2019, he had not bathed, but reported he would bathe before his next session.  (AR 848).  There is no indication in the record whether he did bathe prior to his next session.  By November 2020, Reincke's progress notes showed that although he agreed to bathe at least once a week, he had "been struggling to do this."  (AR 861).

      The record supports at least the severity of Reincke's claim that he was not bathing regularly.  Although the record indicates that Reincke bathed sometime between November 22 and November 26, 2019, it appears that this was his only bath in the two-month time frame indicated by Reincke in January 2020.  (AR 827, 833).  While the ALJ may have been technically correct in finding that the medical record indicates Reincke had, in fact, bathed in the two months prior to the January 8, 2020, consultative examination, a single bath from early November through early January does not disprove Reincke's claims of struggles with hygiene.  Moreover, despite Reincke's claims that he bathed and washed his hair on November 26, 2019, his treatment provider noted that he still presented as untidy and unkempt.  (AR 827).  Moreover, the medical record indicates an ongoing struggle to bathe even once a week.  (AR 833, 848, 854, 861).  The ALJ improperly mischaracterized evidence in finding Reincke's reports of struggles with self-care and hygiene were unsupported by the record.  (AR 18).

      In dismissing Dr. Predina's opinion, the ALJ also relies on Reincke's ability to play softball, clean around the home, clean gutters and cat litter boxes, take out the trash, score volleyball games, and attend and enjoy a concert.  (*Id.*).  However, the ALJ used these activities to contradict Reincke's statement regarding his inability to complete self-care, such as showering, due to his mental health.  (*Id.*).  The ALJ has provided no reasoning or explanation as to how these activities contradict his statements regarding self-care.  Without such an explanation, the Court cannot determine the ALJ's reasoning and provide meaningful review, as it is illogical how the ability to play softball or enjoy a concert contradicts

10

Reincke's statements regarding self-care. Moreover, the ALJ has failed to explain how these activities, which Reincke participated in sporadically, indicate he was functioning at a higher level than found by Dr. Predina.

The medical record indicates that Reincke attended a single concert sometime prior to September 25, 2019, where he reported that he was able to attend and enjoy a concert. (AR 817). However, he stated that he took extra Klonopin in order to manage his anxiety in order to attend. (*Id.*). His treatment provider also noted that this was "the first time provider [has] seen client talk about something he really enjoyed." (*Id.*). The ALJ has failed to explain how the ability to attend a single concert during the relevant time period with the aid of extra medication contradicts Dr. Predina's opinion regarding Reincke's mental impairments. The record also indicates that Reincke enjoyed playing softball. (AR 818, 832, 850, 610, 677). According to treatment notes, Reincke enjoyed softball as he could experience relationships or groups with minimal anxiety. (AR 649). His treatment providers noted that he struggles with interpersonal relationships, especially in groups, and that softball would provide a positive group experience and create healthier activities of daily living. (*Id.*). Once again, the ALJ has failed to explain how Reincke's participation in softball (with no indication of how frequently he played) contradicts Dr. Predina's opinion or Reincke's own statements regarding his mental health struggles. On the contrary, Reincke's treatment notes indicate that Reincke struggled with interpersonal relationships, but that softball provided him a way to interact with groups without anxiety.

The ALJ also mischaracterized Reincke's ability to keep his home clean and attend to household chores. There are only two instances in which Reincke reported completing chores, such as cleaning the cat litter, taking out the trash, and cleaning the gutters. (AR 836, 839). Those two treatment notes occurred one week apart. (*Id.*). One treatment note indicates that he was able to take care of tasks due to his case manager meeting him at home to help him prioritize tasks. (AR 836). However, other treatment notes include statements that indicated Reincke was struggling with completing chores, such as Reincke stating he would "work on … starting to clean up [the] house including changing the litter box." (AR 833). In November 2020, his progress note indicated he continued to struggle with the "condition of [his]

11

living environment." (AR 860). While it is clear that Reincke was physically capable of completing chores, his treatment notes reflect that he needed outside help in order to complete them and struggled to complete them on his own. (AR 833, 860). The ALJ failed to consider the struggles Reincke had with completing tasks due to his mental impairments, despite being physically capable of completing them.

Finally, Reincke takes issue with the ALJ's reliance on Dr. Predina's statement that his effort during testing waxed and waned such that his effort appeared minimal at times. (AR 18). The ALJ found this to be inconsistent with Dr. Predina's opinion that Reincke would likely have problems concentrating on the job. (*Id.*). The ALJ noted that the exam findings do not support significant limitations in these areas, as he was able to perform serial 7's (with one error in ninety seconds) as well as answer some calculations and memory testing. (*Id.*). However, the ALJ found that the notation regarding waxing and waning effort both questions the validity of Reincke's testing results, as well as negates Dr. Predina's opinion regarding concentrating, persisting, and maintaining pace. (*Id.*).

The ALJ's finding that waxing and waning effort contradicts struggles with maintaining concentration is illogical. Waxing and waning effort more logically indicates struggles with maintaining concentration over the whole of the testing. The ALJ has failed to explain how inconsistent effort given during the course of testing contradicts rather than supports Dr. Predina's opinion. Dr. Predina noted that in general, Reincke was cooperative, despite apparent waxing and waning effort. (AR 885). The ALJ has failed to build a logical bridge from the evidence to her conclusion.

The ALJ also found that Dr. Predina's opinion regarding Reincke's cognitive functioning was "of some question." (AR 18). The ALJ relied on Reincke's ability to complete serial 7's, and found that "calculations and memory testing were not reasonably consistent with nor persuasively supportive of significant deficit." (*Id.*). However, the ALJ has not explained how the objective testing fails to indicate some cognitive and memory struggles. Of six mental arithmetic questions, Reincke was only able to answer three correctly. (AR 884). Furthermore, although Reincke answered the memory questions correctly, Dr. Predina noted that he "appeared to be experiencing some problems recalling information," and that he frequently asked for questions to be repeated. (AR 883). The ALJ failed to account for

12

Reincke's need for repetition and apparent time needed to answer in finding that Reincke did not suffer from more significant memory struggles. While the ALJ correctly noted that Reincke was able to answer memory questions and complete at least some of the arithmetic questions, the ALJ failed to consider the notations that Reincke needed questions repeated and "appeared to be experiencing some problems" in recalling information. (*Id.*). This is improper mischaracterization of the evidence.

In sum, the ALJ erred in analyzing Dr. Predina's opinion and considering the supportability and consistency of the opinion. Moreover, the ALJ mischaracterized and cherry-picked evidence in considering how the evidence contradicted Dr. Predina's opinion. As a result, a remand is warranted for reconsideration of Dr. Predina's opinion, Reincke's mental impairments and symptoms, and their impact on the RFC.[2]

### IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Reincke and against the Commissioner.

SO ORDERED.

Entered this 22nd day of February 2022.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge

---

[2] Because a remand is warranted for reconsideration of Reincke's subjective symptoms and mental RFC, the Court need not reach Reincke's remaining arguments. Reincke's remaining arguments regarding the RFC rest on a proper consideration of Dr. Predina's opinion and the medical evidence concerning Reincke's mental impairments, and therefore a proper consideration of Dr. Predina's opinion and the medical evidence may impact those remaining arguments.